IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE DAVIS,

    Petitioner,                  No. CIV S-03-0426 GEB GGH P

    vs.

D.K. BUTLER, et al.,

    Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus. Petitioner challenges his 1999 conviction for two counts of robbery (Cal. Penal Code § 211) and five prior serious felony convictions (Cal. Penal Code § 667). Petitioner is serving a sentence of 60 years to life.

        This action is proceeding on the amended petition filed September 17, 2003. Petitioner raises the following claims: 1) the trial court's denial of petitioner's motion to sever violated petitioner's right to due process; 2) petitioner was denied his right to present evidence and confront witnesses in violation of the Sixth Amendment; 3) the trial court admitted inherently suggestive photographic identification evidence in violation of the Fourteenth Amendment; and 4) insufficient evidence in violation of the Fourteenth Amendment.

After carefully considering the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The AEDPA applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

In reviewing a state court's summary denial of a habeas petition, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000)(citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590 (1991)). In the instant case, the California Supreme Court issued a summary denial of petitioner's petition for review, which raised the claims raised in the instant petition. Respondent's Answer, Exhibits, E, F. Accordingly, the court looks through to the reasoneed decision of the California Court of Appeal.

In evaluating the claims raised in the instant petition, the California Court of Appeal did not apply federal standards. "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" Powell v. Galaza, 328 F.3d 558, 563 (9th Cir. 2003), quoting Packer, 537 U.S. at 8, 123 S. Ct. at 365. Accordingly, this court considers whether the opinion of the California Court of Appeal in denying petitioner's claims was contrary to or an unreasonable application of clearly established Supreme Court authority.

III. Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> On January 20, 1998, Helua Rashed was working as a teller in a Wells Fargo Bank office inside an Albertson's food store at the corner of Gerber and Power Inn Roads in Sacramento. At approximately 5:30 p.m., she noticed a man standing in line waiting for service. He was African-American, five feet eight inches to five feet nine inches tall, weighing no more than 200 pounds and approximately in his 30's. He had no facial hair. The man wore a construction hard hat, dark sunglasses, and a dirty jacket. He held a white handkerchief over his mouth and coughed loudly.
>
> Approximately two minutes after the man arrived at the bank, he came and sat across the counter from Rashed. She asked how she could help him and he asked for change. The man handed Rashed two dollars and she gave him eight quarters. She noted he was wearing a gold nugget ring. Rashed then asked if the man wanted anything else and, after a 10-second delay, he passed her a note which said, in general, "This is a robbery. Give me all your big bills, hundreds, fifties, twenties, tens." The note also said, "Do this and no one will get hurt." The man repeated this threat orally. Rashed took money out of her cash drawer and placed it on the counter. The man took the handkerchief away from his face and grabbed the money. He also retrieved the note and then departed.
>
> Rashed could not identify defendant at trial as the perpetrator. However, she selected defendant's picture from a photographic lineup several months after the robbery. Rashed also identified a ring that had been seized from defendant at the time of his arrest as similar to the one worn by the robber. Rashed denied having seen defendant in the bank between January 20 and January 24, 1998, without the disguise and specifically did not recall closing an account for him at the bank on January 24. She, in fact, denied working at the bank that day.

/////

On January 30, 1998, Cristy Schultz was working as a teller at a U.S. Bank branch on Florin Road in Sacramento. At approximately 5:30 p.m. a man came to her teller station wearing blue jeans, a hooded sweatshirt, an orange construction vest, dark welding goggles and a construction hard hat. He held a white tissue or napkin over his mouth and part of his nose and pretended to have a cold. The man passed Schultz a note which read, "Give me all your money and no one will get shot." She took money from her cash drawer and placed it on the counter. She also gave back the note. The man "scooped" up the money and departed.

Several employees at the bank recognized a robbery was in progress. The branch manager, Amy Matthews, ran out of the bank just after the robber departed. She saw him outside as he ran around a dumpster and along some parked cars and then ducked between two cars. About a minute and a half to two minutes later, Mathews heard a car engine start and stepped out behind the car as it began to back out of a parking space. She wrote the license plate number on a piece of paper which she had brought out with her. The car got within five feet of Mathews before being driven away.

A few minutes later defendant walked into the bank with the money that had been taken and announced he was the robber and that he was just trying to teach the bank a lesson because of its lax security. Defendant said he did not mean any disrespect but was interested in a job as a security agent for the bank. Defendant was wearing the gold ring which was later taken from him and identified by Rashed in connection with the January 20 Wells Fargo robbery.

Mathews informed defendant she was not interested in speaking with him about the matter but that he could take it up with the police who had been summoned. Defendant appeared nervous and jumpy at that point and asked to leave. The manager acquiesced. Based on the license number taken from the robber's vehicle, the police traced defendant to his home and arrested him.

Two rings were seized from defendant at the time of his arrest, inventoried and stored in the property room at the jail. Several months later, at the request of an FBI agent, the rings were retrieved from the property room. Defendant was charged with two counts of robbery and five prior serious felony convictions. His motion to suppress the rings retrieved from police storage was denied, as was his motion to suppress the photographic lineup identification by Rashad. The court also denied defendant's motion to sever trial of the two robbery counts.

Respondent's Answer, Exhibit D, pp. 2-4.

IV. <u>Discussion</u>

    A. <u>Procedural Default</u>

    Respondent argues that petitioner's claims challenging the denial of his severance motion and alleging insufficient evidence are procedurally barred.

\\\\\

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief rests on a state law ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 2554 (1991); Harris v. Reed, 489 U.S. 255, 260-62, 109 S. Ct. 1038 (1989). Generally, the only state law grounds meeting these requirements are state procedural rules. However, the procedural basis of the ruling must be clear. Ambiguous reference to procedural rules is insufficient for invocation of procedural bar. Calderon v. United States District Court (Bean), 96 F.3d 1126, 1131 (9th Cir. 1996). Similarly, where the procedural and merits analysis are intermixed, it cannot be said that the procedural bar is independent of federal law, i.e., there is no plain statement of reliance on procedural bar. Harris v. Reed, supra.

If there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner demonstrates: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. Harris, 489 U.S. at 262, 109 S. Ct. at 1043. The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. McCleskey v. Zant, 499 U.S. 467, 493-94, 111 S. Ct. 1454, 1476 (1991). Examples of cause include showings "that the factual or legal basis for a claim was not reasonably available to counsel," "that some interference by officials made compliance impracticable," or "of ineffective assistance of counsel." Murray, 477 U.S. at 488, 106 S. Ct. at 2645. Prejudice is difficult to demonstrate:

> The showing of prejudice required under Wainwright v. Sykes is significantly greater than that necessary under "the more vague inquiry suggested by the words 'plain error.'" Engle, 456 U.S., at 135, 102 S.Ct., at 1575; Frady, supra, 456 U.S., at 166, 102 S.Ct., at 1593. See also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The habeas petitioner must show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

1     dimensions." Frady, supra, at 170, 102 S.Ct., at 1596.

2 Murray v Carrier, 477 U.S. at 493-494, 106 S. Ct. at 2648 (1986).

3     Although different phraseology is used in the default context from that used in the ineffective assistance of counsel prejudice inquiry, as stated above, the ultimate application of the two prejudice inquiries is essentially similar – that is, whether the prejudice is sufficient to have undermined the reviewer's confidence in the result of the trial.

    In his appeal filed in the California Court of Appeal, petitioner raised his claims challenging the denial of his severance motion and alleging insufficient evidence. Answer, Exhibit D. Petitioner did not raise these claims in his petition for review filed with the California Supreme Court. Answer, Exhibit E. Petitioner raised these two claims, as well as several others, in a habeas corpus petition filed in the Sacramento County Superior Court. Answer, Exhibit H. Citing In re Waltreus, 62 Cal. 2d 218, 225 (1965) and In re Harris, 5 Cal. 4th 813, 828 (1993), the Superior Court denied these claims on grounds that they were raised and rejected on appeal:

> Claims that were raised and rejected on appeal are not cognizable on habeas corpus unless the petitioner can show that 1) clear and fundamental constitutional error strikes at the heart of the trial process; 2) the court lacked fundamental jurisdiction; 3) the court acted in excess of jurisdiction not requiring a redetermination of facts; or 4) a change in law after the appeal affected the petitioner. (In re Waltreus (1965) 62 Cal.2d 218, 225; In re Harris (1993) 5 Cal.4th 813, 828.) Claims of ineffective assistance of counsel are generally not barred by the above doctrines. (See In re Robbins (1998) 18 Cal.4th 770, 814, fn. 34.)
>
> Petitioner is serving a sentence of 60 years to life for conviction of two counts of robbery; a jury also found that five prior strike allegations were true. Petitioner's conviction was affirmed in October 2000. His petitions for review to the United States and California Supreme Courts were denied. Petitioner acknowledges that most of his claims were raised and rejected on appeal. As Petitioner has shown no exception to the Waltreus rule, those claims are barred.

Answer, Exhibit I.

    Petitioner next raised these claims in a habeas petition filed in the California Supreme Court, which was denied without comment or citation. Answer, Exhibits J, K.

/////

The court looks through to the last reasoned state court judgment, in this case the opinion by the Superior Court, to determine whether a claim is procedurally barred. Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991).

In Ylst v. Nunnemaker, 501 U.S. 797, 805, 111 S. Ct. 2590, 2595 (1991), the Supreme Court concluded that a Waltreus citation is neither a ruling on the merits nor a denial on procedural grounds. It held that since petitioners in California are not required to go to state habeas for exhaustion purposes, a Waltreus denial on state habeas has no bearing on their ability to raise a claim in federal court. 501 U.S. at 805, 111 S. Ct. at 2595. Thus, federal courts "look through" a denial based on Waltreus to previous state court decisions. Id. at 805-806, 111 S. Ct. at 2595-96.

In Forrest v. Vasquez, 75 F.3d 562 (9th Cir. 1996) the Ninth Circuit found that, under the circumstances of that case, the citation to Waltreus showed that the basis of the decision by the California Supreme Court was procedural default. In Forrest, the petitioner appealed his conviction to the California Court of Appeal arguing, in part, that he had been denied access to the law library. 75 F.3d at 563. The California Court of Appeal affirmed his conviction. Id. Under Rule 28(b) of the California Rules of Court, a petition for review to the California Supreme Court must be filed within ten days after the Court of Appeal decision becomes final. Id. The Forrest petitioner failed to file a timely petition for review, and the California Supreme Court denied his application for relief from default. Id. The Forrest petitioner later filed a petition for habeas corpus in the California Supreme Court, again alleging that his rights had been violated by denial of law library access. Id. The California Supreme Court denied the petition citing Waltreus. Id.

The Ninth Circuit found that the petitioner's failure to raise his claim in a petition for review cost him his only chance to present properly his claim to the California Supreme Court because Waltreus prohibits that court from reviewing on habeas any claim raised during the direct appeal process. Id. at 564. "The effect of the Waltreus rule is that a California prisoner

wishing to exhaust remedies in state court should generally present his claim to the California Supreme Court in a petition for direct review, rather than a habeas petition." Id.  The failure of the Forrest petitioner to file a timely petition for review deprived the California Supreme Court of an opportunity to address his claim in the first instance, and resulted in the procedural default of this claim.  Id.

The Ninth Circuit distinguished Forrest from Ylst in that in Ylst, the Supreme Court looked through a Waltreus citation, and then various unexplained orders, to the last *explained* state judgment.  In Forrest, the Ninth Circuit stated that it would not look past the California Supreme Court's *unexplained* order denying his application for relief from default.  Id. "The 'nature' and 'surrounding circumstances' of the unexplained order clearly show that the basis of the decision was procedural default." Id.

The instant case is distinguishable from Forrest in that here, there is no order finding these claims defaulted on direct appeal.  No published case holds that Forrest is to be extended into areas where the federal courts will *presume* that *if* a late appeal to the California Supreme Court were to be filed, it would be denied as untimely.  This court is able to look through the Superior Court opinion to the reasoned opinion of the California Court of Appeal denying these claims on the merits.  Accordingly, Waltreus does not bar these claims.[1]

B. Suggestive Line-up

Petitioner argues that the trial court erred in admitting evidence of the photographic lineup presented to Helua Rashad.  The evaluation of whether admission of an out-of-court identification procedure violates due process involves a two-part analysis.  First, the court examines the totality of the circumstances to determine whether the identification procedure was impermissibly suggestive so as to give rise to a very substantial likelihood of

---

[1] Forrest is questionable because it rewards petitioners who do not file anything with the California Supreme Court following the decisions by the California Court of Appeal, and punishes those who do, albeit in an untimely fashion.

misidentification.  Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968); United States v. Nash, 946 F.2d 679, 681 (9th Cir. 1991).  If the procedure was impermissibly suggestive, the court goes on to consider whether the identification testimony is sufficiently reliable to be admitted into evidence.  Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987); Nash, 946 F.2d at 681.  Factors affecting the reliability of an identification include:

> 1) the opportunity of the witness to view the crime at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation.

United States v. Jones, 84 F.3d 1206, 1209 (9th Cir. 1996) (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382 (1972)).

In his direct appeal in state court, petitioner advanced an argument in support of a claim of an impermissibly suggestive lineup which the California Court of Appeal rejected:

> Defendant contends the trial court erred in admitting evidence of the photographic lineup presented to Helua Rashed.  According to defendant, the pictures selected did not correspond with Rashed's description of the robber and were not sufficiently similar to defendant.  Defendant argues this evidence infected both robbery convictions because of cross-admissibility.
>
> The question of whether an extrajudicial identification admitted at trial is so unreliable as to violate due process "depends on 1) whether the identification procedure was unduly suggestive and unnecessary [citation]; and if so, 2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation [citation].  If, and only if, the answer to the first question is yes and the answer to the second is no, is the identification constitutionally unreliable." (People v. Gordon (1990) 50 Cal.3d 1223, 1242.)  It is unsettled whether this is a question of fact, subject to de novo review.  (Ibid.; see also People v. Ochoa (1998) 19 Cal.4th 353, 413.)  However, as we shall explain, even utilizing de novo review we find no error.
>
> Defendant complains the individuals selected for the photographic lineup did not match the description of the perpetrator provided by Rashed.  In particular, Rashed testified the perpetrator did not have facial hair, yet all the individuals included in the lineup had facial hair.  However, notwithstanding Rashed's

>testimony, the photograph of defendant used in the lineup shows facial hair. Defendant's photograph also shows a short haircut. In order not to have defendant stand out from the others, and thus render the lineup unduly suggestive, the photographs selected depicted individuals with facial hair and short haircuts.
>
>Defendant's argument that the individuals included in the lineup must match the description of the perpetrator given by the witnesses would mean a perpetrator would be free to change his own appearance after the incident and thereby gain an advantage in the identification. For example, if defendant had had no facial hair at the time of the offense, he could later grow facial hair and then insist that others included in the lineup have none. This would create an unduly suggestive lineup in defendant's favor. Instead, the lineup should contain photographs of individuals similar to defendant so that he would not be singled out, either favorably or unfavorably.
>
>Defendant contends the individuals selected were so dissimilar to him in appearance as to make the lineup suggestive. We have reviewed the photographs and disagree. Each of the individuals is African-American of approximately the same age and build as defendant. Each had short hair and some type of facial hair. Their complexions differ, but not significantly. In our view, there was nothing in the lineup which would have suggested to the viewer one photograph over another.

Respondent's Answer, Exhibit D, pp. 15-17.

A black and white copy of the photographic lineup is contained in the court reporter's transcript at pages 118-119. In petitioner's unopposed motion to expand the record, filed January 21, 2004, color photographs are attached.

Factual issues within a claim that a pretrial photo display or line-up were suggestive and unreliable are factual inquiries subject to AEDPA factual presumption of correctness. Brothers v. Dowdle, 817 F.2d 1388 (9th Cir. 1987); see also English v. Cody, 241 F.3d 1279, 1282 (10th Cir. 2001). Appellate courts' factual findings are entitled to the same deference as trial court factual findings. Sumner v. Mata, 455 U.S. 591, 592-93, 102 S. Ct. 1303, 1304 (1982). Thus, the appellate court factual findings control here unless petitioner demonstrates by way of referral to evidence that such findings are clearly and convincingly incorrect. 28 U.S.C. § 2254(e)(1).

The court will not delve into a photo-by-photo comparison here. Based on the Court of Appeal explanation, the undersigned cannot find that the state court clearly and

convincingly erred. Nothing petitioner has adduced would lead the court to such a conclusion.

### C. Claim 1: Motion to Sever

Petitioner argues that the trial court's denial of his severance motion violated his right to due process.

On habeas review of a prisoner's challenge to a trial court's failure to sever trial of some counts in an indictment, we may only grant the writ if the joinder resulted in an unfair trial." Sandoval v. Calderon, 241 F.3d 765, 771-772 (9th Cir. 2000). "There is no prejudicial constitutional violation unless 'simultaneous trial of more than one offense. . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process.'" Id. at 772, quoting Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991). "This prejudice is shown if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." Id. The risk of undue prejudice is great whenever joinder of counts allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible. Id. "Undue prejudice may also arise from the joinder of a strong evidentiary case with a weaker one." Id. "The reason there is danger in both situations is that it is difficult for a jury to compartmentalize the damaging information." Id.

In denying this claim the California Court of Appeal found as follows:

> Joinder of separate offenses for trial is normally proper when they are "offenses of the same class..." (Pen. Code, § 954.) On a motion to sever, the defendant bears the burden of clearly establishing "that there is a substantial danger of prejudice requiring that the charges be separately tried." (People v. Bean (1988) 46 Cal.3d 919, 938). We review the trial court's ruling on a motion to sever for abuse of discretion. (People v. Bradford (1997) 15 Cal.4th 1229, 1315.) Factors to be considered are: 1) cross admissibility of the evidence; 2) joinder of a weak case with a strong one; 3) joinder of inflammatory crimes with other crimes; and 4) joinder of capital crimes with noncapital crimes. (Williams v. Superior Court (1984) 36 Cal.3d 441, 452-454.) Not all of these considerations are of equal weight, however. "'[T]he first step in assessing whether a combined trial [would be] prejudicial is to determine whether evidence on each of the joined charges would [be] admissible, under Evidence Code section 1101, in separate trials on the other. If so, any inference of prejudice is dispelled.'" (People v. Bradford, supra, 15 Cal.4th at pp. 1315-1316; see Pen. Code, § 954.1.) A determination of whether the trial court properly denied severance is made on the basis of the evidence and circumstances known to the court at the time of the ruling. (People

v. Balderas (1985) 41 Cal.3d 144, 171.)

In denying defendant's motion, the trial court found the evidence cross-admissible. According to the court, evidence of the January 20 robbery was admissible to prove intent in connection with the January 30 robbery and evidence of the January 30 robbery was admissible on the January 20 robbery to prove identity.

Evidence Code section 1101, subdivision (a), bars the admission of character evidence, including evidence of specific instances of uncharged offenses, to prove the conduct of a person on a particular occasion. However, such prohibition does not extend to evidence of uncharged offenses when relevant to prove some fact in issue, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or consent. (Evid. Code, § 1101, subd. (b).) The admissibility of evidence of uncharged offenses under Evidence Code section 1101 depends on the fact sought to be proven and the degree of similarity between the charged and uncharged offenses. (People v. Ewoldt (1994) 7 Cal.4th 380, 402-403). Greater, similarity is needed to prove a common design or plan than to prove intent, whereas the greatest degree of similarity is needed to prove identity. (Ibid.)

In order for evidence of the January 30 robbery to have been admissible in a separate trial of the January 20 robbery on the issue of identity, the greatest degree of similarity is necessary. In this instance, we agree with the trial court such similarity was established. According to the information presented to the court at the time of the severance motion, both offenses were bank robberies and occurred at small branch offices. Both offenses were committed in south Sacramento and were separated by only 10 days. In both robberies, the perpetrator wore a construction hard hat and sunglasses and held a white cloth over his mouth to obscure his face. He also approached the teller as if to conduct a regular transaction and then passed a note to her demanding money. The notes were similar in wording. The perpetrator wore a gold ring in the January 20 robbery and this same ring was taken from defendant at the time of his arrest for the January 30 robbery. In neither instance did the perpetrator display any type of weapon. Although there were some dissimilarities, such as the different description of the hard hat and the request for change in one robbery but no in the other, these were insignificant. In light of cross-admissibility of the evidence, any suggestion of prejudice was dispelled. The severance motion was properly denied.

Answer, Exhibit D, pp. 10-12.

For the reasons stated by the California Court of Appeal, this court finds that the denial of petitioner's severance motion was proper. In the amended petition, petitioner argues that evidence of the Wells Fargo robbery was much weaker because there was little evidence that petitioner was the robber. As discussed above, under state law, evidence of the U.S. Bank robbery was admissible to prove identity. While no witness identified petitioner as the

perpetrator at trial, evidence that Rashed identified petitioner as the perpetrator during a photographic lineup was properly admitted.

Petitioner also argues that evidence of the U.S. Bank robbery was weak because the evidence showed that petitioner did not have the proper mens rea. As discussed by the California Court of Appeal, evidence that petitioner committed the Wells Fargo Bank robbery was properly admitted to demonstrate petitioner's intent.

Had the motion to sever been granted, evidence of the robberies would still have been admissible in the individual trials under Cal. Evid. Code § 1101 to prove intent and identity.

In the amended petition, petitioner also argues that had the cases been tried separately he may have elected not to testify. Petitioner's speculation that he may not have testified had the charges been tried separately is not one of the factors the court considers in determining whether he was prejudiced by the denial of his severance motion. Rather, as discussed above, the court considers the evidence presented in support of the charges – not petitioner's defense.

Petitioner also argues that there was not sufficient commonality between the two cases to justify trying them together. Petitioner argues that the robberies occurred at different banks. Because the robberies were similar in the other respects discussed by the state appellate court, the fact that they occurred at different banks is not material. Petitioner also argues that the robberies differed in time and method in that in the Wells Fargo robbery, the robber presented the teller with a demand note after asking for change. In the U.S. Bank robbery, the petitioner just presented a demand note and then returned the money. This court agrees with the California Court of Appeal that the differences between the two robberies cited by petitioner are insignificant compared to the similarities.

Because the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority, this claim should be denied.

D. <u>Right to Present Evidence/Confront Witnesses</u>

Petitioner argues that he was denied his Sixth Amendment right to confront and cross-examine a witness when the trial court denied his request to admit evidence of his handwriting. The background to this claim is as follows.

Rashed testified that the note presented to her by the robber was sloppily written. RT at 309. When petitioner testified, his counsel asked him to write on a blank piece of paper the words that Rashed had said were in the note. RT at 537. Petitioner's counsel argued that he wanted to show the jury what petitioner's handwriting looked like. RT at 539. The court upheld the prosecution's objection to this evidence on grounds that it was not relevant. RT at 539.

Petitioner sought to admit evidence of his handwriting during his testimony. He did not seek to show his handwriting to Rashed during his cross-examination of her. Therefore, the court finds that this claim is more appropriately characterized as a claim for violation of the Sixth Amendment right to present a defense rather than as a violation of the Sixth Amendment right to cross-examine a witness.

"[T]he Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" <u>Crane v. Kentucky</u>, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984)). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973).

"In a habeas proceeding, we have traditionally applied a balancing test to determine whether the exclusion of evidence in trial court violated petitioner's due process rights, weighing the importance of the evidence against the state's interest in exclusion." <u>Chia v. Cambra</u>, 360 F.3d 997, 1003 (9th Cir. 2004). The court applies a five-part balancing test in weighting these interests: 1) the probative value of the excluded evidence; 2) its reliability; 3) whether it is capable of evaluation by the trier of fact; 4) whether it is the sole evidence on the

1  issue or merely cumulative; and 5) whether it constitutes a major part of the attempted defense.

2  Id. at 1004.

3  In finding that the trial court properly excluded evidence of petitioner's

4  handwriting, the California Court of Appeal found as follows:

> Inasmuch as the note presented to Rashed was not available for trial, the question presented to the court was not whether the handwriting on that note matched that of defendant. Rather, defendant sought to prove he did not write the note by presenting exemplars of his handwriting which, presumably, were not sloppy. However, the question of what Rashed meant when she described the writing on the note as "[s]loppy is unclear. What is sloppy to one person may not necessarily be sloppy to another. Furthermore, as the trial court noted, the preparer of such note would normally have an incentive to disguise his handwriting. In addition, the circumstances surrounding preparation of a robbery demand note are substantially different from those attending the writing of a letter or the preparation of an exemplar in court. Under the totality of the circumstances presented, examples of defendant's handwriting had little or no probative value on the question of whether he prepared the demand note.

12 Respondent's Answer, Exhibit D, pp. 18-19.

13  For the reasons discussed by the California Court of Appeal, the court finds that

14 evidence of petitioner's handwriting at trial was not particularly probative of whether he prepared

15 the note. As to the second factor discussed above, reliability of this evidence was not an issue.

16 Because this evidence was not relevant, its admission would likely have confused the jury.

17 Therefore, this factor also weighed against its admissibility. Because the evidence was not

18 relevant, the court does not find that it was the sole evidence on this issue nor that it constituted a

19 major part of the attempted defense. For these reasons, the court finds that the exclusion of

20 petitioner's handwriting at trial did not violate his right to present a defense.

21  The denial of this claim by the California Court of Appeal was not an

22 unreasonable application of clearly established Supreme Court authority. Accordingly, this claim

23 should be denied.

24  E. Insufficient Evidence

25  When a challenge is brought alleging insufficient evidence, federal habeas corpus

26 relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc). United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991) (emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state

appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, __ F.3d __, 2005 WL 1301570 (9th Cir. 2005).

*Analysis*

Petitioner argues that there was insufficient evidence to support his conviction for the Wells Fargo robbery because no witness could positively identify him as the robber. The California Court of Appeal denied this claim on the following grounds:

> Helua Rashed testified that, when the robber reached to pick up the money from the counter between them, he took his hand away from his mouth for a second or two. She was able to see his face, although his eyes were still covered by dark glasses. At trial, which occurred nine months after the robbery, Rashed testified she was "not sure" defendant was the robber. However, earlier she had selected his picture from a photographic lineup. She testified he "looked like the guy who had robbed [her]." She indicated her selection was based on the "characteristics of his mouth" and the "roundness of [his] face." According to Rashed, the person who robbed her had "a pretty round face." She also identified some "freckles or something" and "something in the photo that [she] remembered from the robbery" but could not recall at trial.
>
> Even if Rashed's identification of defendant in the photographic lineup was not enough alone to support the conviction, there is much more here. Rashed also testified she made a point of remembering a "gold nugget ring" worn by the robber. She identified one of the rings taken from defendant following his arrest as the one worn by the robber. Rashed later testified the ring taken from defendant "[l]ooks similar to" the ring worn by the robber, but admitted she could not say the rings were one in the same.
>
> More significant than the ring evidence, however, is the fact that, only 10 days after the Wells Fargo robbery, defendant committed a robbery at a U.S Bank Branch using a substantially similar disguise and modus operandi as the Wells Fargo robber. Defendant argues the two robberies were not sufficiently similar. According to defendant: "The banks were different. The Wells Fargo robber wore different clothes. He had a different hard hat. The demand notes were different. The dark glasses were described differently. The modus operandi was different, i.e., asking for change before producing a demand note." Suffice it to say, defendant's attempt to distinguish the two incidents by various minutiae is unavailing. As explained previously, the two incidents were sufficiently similar to permit an inference that the same person committed both robberies. There was substantial evidence to support defendant's conviction of the Wells Fargo robbery.

Answer, Exhibit D, pp. 20-21.

The decision by the California Court of Appeal that petitioner's conviction for the Wells Fargo robbery was supported by sufficient evidence was not an unreasonable application

of clearly established Supreme Court authority. For the reasons discussed by the California Court of Appeal, a rational jury could have found petitioner guilty based on the evidence presented. Accordingly, this claim should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 6/17/05

/s/ Gregory G. Hollows

---
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:12
dav426.157